IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>ORLIN GARCIA,<br><br>        Defendant. | **FINDINGS OF FACT,<br>CONCLUSIONS OF LAW,<br>AND ORDER**<br><br>Case No.  2:05CR280 DAK |

      This matter is before the court on Defendant Orlin Garcia's Motion to Suppress.  An evidentiary hearing on the motion was held on August 15, 2005.  A supplemental evidentiary hearing was also held on August 23, 2005.  After briefing by the parties, closing arguments were heard on September 23, 2005.  At the various hearings, Defendant was represented by D. Gilbert Athay, and the United States was represented by Veda M. Travis.  Before oral argument, the court carefully considered all pleadings, memoranda, and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to this motion.  Now being fully advised, the court renders the following Findings of Fact, Conclusions of Law, and Order.

**FINDINGS OF FACT**

      Lance Bushnell is a trooper with the Utah Highway Patrol, having served in that capacity for approximately 19 years.  Bushnell is currently assigned to the Richfield, Utah area. As a trooper with the highway patrol, Bushnell has received specialized training in drug

pipelines, having attended a number of training courses during his 19 years with the patrol. Bushnell has also taught classes on drug pipelines to other law enforcement officers, including officers in Idaho, Wyoming, Nevada, Australia, and New Zealand.

In the training courses he has attended, Trooper Bushnell has received training in recognizing indicators of drug trafficking. An "indicator" is something that indicates the possibility of drug smuggling. In his career, Trooper Bushnell has made more than 100 drug pipeline arrests and assisted other officers with at least another 100 arrests. In his experience, Bushnell's largest seizures of narcotics include 43 pounds of methamphetamine, 550 pounds of marijuana and 250 kilograms of cocaine.

On or about March 13, 2005, Bushnell of the Utah Highway Patrol was on duty patrolling in Richfield on Interstate 70, at approximately milepost 53. Around five o'clock in the afternoon he observed a vehicle heading eastbound drift into the emergency lane, then as it passed he also noticed the license plate was obscured by a plate cover. Bushnell was unable to read the license plate because of the cover. Utah law requires that a vehicle travel within its own lane and requires that a license plate be legible within 100 feet. See Utah Code Ann. §§ 41-1a-403, 41-6a-710.

Bushnell pulled onto the highway to follow the vehicle and again observed it pass into the emergency lane; at that time he initiated a traffic stop. When he approached the vehicle, Mr. Garcia was the sole occupant. In response to Bushnell's request for his driver's license and registration, Mr. Garcia offered his California driver's license. At that time, Garcia was looking through papers and handed Bushnell a title for the car in the name of Arturo Rodriguez, Des

Moines, Iowa. When Garcia gave Trooper Bushnell his driver's license and the title to the car, he appeared nervous; his hands were trembling and shaking.

When Trooper Bushnell asked about the owner, Garcia told him that the car was owned by an individual named Alvaro.[1] Bushnell asked how Garcia, who had a driver's license from California, had come into contact with the car, which was owned by someone in Iowa. Garcia said he worked in Des Moines, had traveled to California to see family and was on his way back to Iowa. Garcia told Trooper Bushnell he had to be back to work on Monday, March 14. When Bushnell asked Garcia what he did for a living, Garcia said that he did body work on cars.

The initial conversation lasted for about 11 minutes. Up to this point, Trooper Bushnell and Garcia had been speaking English. Garcia appeared to understand Bushnell, and Bushnell understood Garcia when he could hear Garcia clearly.

Bushnell returned to his patrol car to request further information from dispatch, including Mr. Garcia's criminal history and an N.C.I.C. check on the car. He claims he was suspicious that the vehicle was stolen due to the information Mr. Garcia had provided regarding the owner's name. He also stated that Mr. Garcia appeared nervous, "He wasn't real easy in the seat. His hands were trembling, and at one point when he was in his wallet looking through his dollars you could see his hands were shaking and he just appeared uneasy."

After contacting dispatch, Bushnell discovered that the vehicle was not registered as stolen. While running that information, Sgt. John Ellis arrived and Bushnell told Ellis about the third-party registration and the fact that Garcia did not know the registered owner's first name.

---

[1] It is undisputed that Orlin Garcia told Trooper Bushnell that the owner's name was "Alvaro" although Trooper Bushnell thought Garcia was saying the name "Alberto."

Bushnell found this suspicious.  At the conclusion of the conversation with Sgt. Ellis, Bushnell summoned Mr. Garcia back to his patrol car for further questioning.  Bushnell told Garcia why he had stopped him and, due to the improper lane travel, asked Garcia if he was tired.  Trooper Bushnell confronted Garcia with the fact that the owner's name was Arturo.  Garcia responded by telling Bushnell that Arturo was the owner's middle name.[2]  Bushnell thought that Garcia had concocted that claim.   While Trooper Bushnell and Garcia were talking, Garcia told Bushnell that he had taken the car to California to a buyer, but the buyer had decided not to purchase the car because the vehicle wasn't balanced properly.

Then, Bushnell again informed Mr. Garcia that he was issuing him a warning citation, and "gave him back his driver's license, the title, and issued him the warning citation at the same time."   Bushnell continued asking him questions about the car in English and Spanish, which Mr. Garcia responded to in English.   Bushnell then asked Garcia if there were any drugs in the car, specifically asking about marijuana, cocaine, methamphetamine and heroin.  Garcia looked away and denied there were drugs in the car.  At one point Bushnell asked him whether there was marijuana in the car, and Mr. Garcia said that "[he] doesn't even smoke cigarettes." Bushnell also asked Garcia if there was anything in the trunk, and Garcia said there was not.[3]

Based on his training and experience, Trooper Bushnell believed that Garcia was

---

[2]  Prior to Trooper Bushnell telling Garcia that the owner's name was Arturo, Garcia had never mentionned the name Arturo.  Garcia then claimed the owner's name was Alvaro Arturo Rodriguez, a claim that is not plausible.  If Arturo were the owner's middle name and Alvaro his first name, the title should have been in the name of Alvaro Rodriguez. And if the owner was known by his middle name, Arturo, Garcia should have known that fact.

[3]  Trooper Bushnell spoke some Spanish to Garcia at this point, using a word he believed meant "trunk." The word is found in Latin American Spanish dictionaries and is understood by Spanish speakers.  The videotape indicates that Garcia understood Trooper Bushnell because he clarifies that he has clothes in the back seat, not the trunk.

transporting narcotics.  Bushnell based his belief, in part, on Garcia's nervousness and trembling hands, the third-party registration, the fact that Garcia did not know the registered owner's name, the fact that Garcia broke eye contact when Bushnell mentioned drugs, and the fact that Garcia was traveling on a known drug pipeline from an export area, California, to an import area, Iowa.

Trooper Bushnell then asked Garcia, "Do you care if I look?  Do you care if I search?" Bushnell wondered if Garcia understood him completely.  In Bushnell's summary report, he makes a notation in paragraph eight that "[Mr. Garcia] appeared to have not completely understood."  Bushnell even testified that it was his judgment that Mr. Garcia did not appear to understand what he was saying at that time.  However, he continued to question him by using the Spanish words "buscar" and "mirar."[4]  In response to the first, Garcia said, "You want to see, okay?" When Bushnell was satisfied that he had obtained a valid consent to search, he accompanied by Sgt. Ellis, to search the vehicle.

When Trooper Bushnell asked Garcia for consent to search, neither Bushnell nor Sgt. Ellis raised their voices to Garcia, threatened Garcia or drew their weapons.    Trooper Bushnell conducted a quick pat down of Garcia, asking him if there were any guns on him.  Bushnell did the pat down for his own safety.  Trooper Bushnell, assisted by Sgt. Ellis, began searching the car, beginning in the passenger compartment.  Sgt. Ellis found a receipt from the Discount Tire Center in Long Beach, California, dated March 10, 2005.  The customer's name on the receipt

---

[4]  Trooper Bushnell used the verbs "buscar" and "mirar" which mean "to look for" and "to look" or "to look at."   The defense's expert, Dr. Gerald Curtis, testified that when Bushnell used the verb "buscar," he was asking, "Can I look for in your car?"  Dr. Curtis admitted that he could understand the phrase if it were placed in context.  Dr. Curtis further acknowledged that he had no knowledge of what Garcia was thinking.  Dr. Curtis indicated that when Bushnell used the verb "mirar," he was asking if he could "look at in your trunk."  The government's expert, DEA Special Agent Aaron Raty, however, testified that "mirar" means "to look" as well as "to look at."   Agent Raty testified that he understood Bushnell's meaning.

was "Enrique Corona."  The service provided was a four wheel alignment and wheel balancing.

The receipt raised further suspicions with Trooper Bushnell based on the name of Enrique Corona, a person who had not been mentioned by Garcia.  The auto work was also consistent with drug smuggling operations in which vehicles must be properly maintained and which often have auto shop contacts who know how to hide controlled substances within vehicles.

Trooper Bushnell then moved onto the trunk where he noticed a spare donut tire with an oily substance on the outside and on the rim.  Bushnell was suspicious of the tire because in his training and experience, spare tires can be used to conceal contraband.  In Bushnell's experience, the oily substance could have been used to remove the tire in order to place drugs inside or to clean the tire afterwards.

Trooper Bushnell then lifted the tire up and noticed that it was significantly heavier than the normal tire.  He let a small amount of air out of the tire and noticed a chemical odor rather than the stale rubber smell that would be expected.   Bushnell turned the tire over and could see marks on the tire where the tire had been broken down.  The marks appeared fresh.  Bushnell then smelled the air from the tire again and confirmed the chemical odor.

Trooper Bushnell decided to take the tire into an auto shop and break it down.  He then placed Garcia in handcuffs and placed Garcia in his patrol car.  Garcia had not been formally placed under arrest.  Trooper Bushnell drove to Gayle's Chevron in Richfield, a mechanic shop that does tire repairs. Mechanics tried to take the tire off the metal rim, but no one could get the tire off.  The tire was then cut off the rim and 15 packages of a substance which field tested positive for methamphetamine were located inside.

Mr. Garcia has been charged as follows: Count I, Possession with Intent to Distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

## CONCLUSIONS OF LAW

There is no issue in this case regarding whether the initial stop was justified. The question is whether the detention was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 20 (1968)

In addressing the second prong of the Terry analysis, whether the detention was reasonably related to the scope of the traffic stop, the Tenth Circuit has recognized that an officer conducting a routine traffic stop may run computer checks on: 1) the driver's license, 2) the vehicle registration, 3) other proof of authorization to operate the vehicle, 4) outstanding warrants on the driver, and 5) whether the vehicle has been reported stolen. *United States v. Mendez*, 118 F.3d 1426, 1429 (10th Cir. 1997); *see United States v. Taverna*, 348 F.3d 873, 877 (10th Cir. 2003). Moreover, an officer may detain the driver and vehicle as long as reasonably necessary to make these determinations or to issue a citation or warning. *Mendez*, 118 F.3d at 1429.

Under those parameters, Trooper Bushnell did not impermissibly detain Defendant or exceed the scope of the stop. As an initial matter, the record establishes that defendant was detained for only 14 minutes before Trooper Bushnell returned Defendant's documents and issued him a warning citation. Moreover, the evidence shows that during those 14 minutes, Trooper Bushnell contacted his dispatcher in order to run computer checks, drafted a warning citation and issued the citation to the Defendant. The 14 minute detention, therefore, was

reasonable.

In addition, during the 14 minute stop, Trooper Bushnell developed reasonable suspicion that Defendant was engaged in criminal activity. "An investigative detention may be expanded beyond its original purpose . . . if during the initial stop the detaining officer acquires reasonable suspicion of criminal activity." *United States v. Villa-Chaparro*, 115 F.3d 797, 801 (10th Cir. 1997)(quotations omitted). In assessing whether Trooper Bushnell could have formed a reasonable and articulable suspicion of criminal activity, this Court is not to base its decision on any one factor, but rather, on the "totality of the circumstances." *United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995). Deference is to be given "to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances." *Mendez*, 118 F.3d at 1431. In *Mendez*, the court stated that

> [t]he process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same–and so are law enforcement officers. . . . [T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. Trained officers aware of the modes and patterns of operation of certain kinds of lawbreakers can draw inferences and make deductions that might well elude untrained persons.

*Id.* (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

In developing reasonable suspicion, an officer is allowed "to draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002)(citations & quotations omitted). Moreover, in the analysis, it is not appropriate for courts to "pigeonhole each purported fact as either consistent

with innocent travel or manifestly suspicious.  Rather, the reasonable suspicion calculus turns on whether the specific articulable facts, when viewed together through the lens of a reasonable law enforcement officer, justified a brief roadside detention." *United States v. Doyle*, 129 F.3d 1372, 1376 (10th Cir. 1997).  As such, factors that by themselves are not proof of any illegal conduct may be, when taken together in the aggregate, sufficient to amount to reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 9 (1989); *see Arvizu*, 534 U.S. at 277 (finding that factors susceptible to innocent explanation may, when taken together, form reasonable suspicion of criminal activity).

In the instant case, the evidence establishes that Trooper Bushnell was suspicious that the car being driven by the Defendant was stolen.  Defendant had provided Bushnell with a title in the name of Arturo Rodriguez, had told Bushnell that Rodriguez was a friend of his, but did not know Rodriguez's correct first name.  It is well established that the inability of a driver to produce some indicia that he is authorized to operate a vehicle gives rise to an objectively reasonable suspicion that the vehicle may be stolen.  *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir. 1998) (stating inability of driver to produce some indicia of authorization to operate vehicle gives rise to objectively reasonable suspicion vehicle may be stolen, justifying further detention); *United States v. Doyle*, 129 F.3d 1372, 1377 (10th Cir. 1997)(finding agent had reasonable suspicion to continue questioning defendant and to request permission to search car based on inconsistent information defendant provided concerning ownership of vehicle); *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1484 (10th Cir. 1994)(stating inability of defendant to provide proof he is entitled to operate vehicle supports reasonable suspicion and investigative detention); *United States v. Horn*, 970 F.2d 728, 732 (10th Cir. 1992)(finding

defendant's proffer to suspicious ownership papers and title in another's name justified reasonable suspicion).

Secondly, in addition to Trooper Bushnell's suspicion that the vehicle may be stolen, the officer had reasonable suspicion that Defendant was transporting narcotics based on the following factors or indicators:

1. The vehicle was registered to a third party; *see Villa-Chaparro*, 115 F.3d at 802 (fact that a defendant is driving a car registered to someone else has been found to contribute to reasonable suspicion of criminal activity);

2. Defendant did not know the name of the owner of the vehicle; see *United States v. Sandoval*, 7 Fed. Appx. 861, 865 (10th Cir. 2001) (unpublished opinion, attached hereto as Exhibit B) (lack of knowledge of the registered owner has been found to contribute to reasonable suspicion);

3. Defendant had implausible travel plans; he had been stopped in Utah by Trooper Bushnell at 5 p.m. on Sunday and claimed that he had to be back to work in Iowa on Monday;[5] *see United States v. Kopp*, 45 F.3d 1450, 1454 (10th Cir. 1995)(implausible explanation regarding travel plans found to contribute to reasonable suspicion);

4. Defendant gave Bushnell an inconsistent and implausible story regarding his trip; Defendant said he had been to California to visit family, but then also claimed he had driven the car to California to show to a buyer who had decided not to purchase the car; *see Hunnicutt*, 135 F.3d at 1349 (inconsistencies in information provided may give rise to reasonable suspicion of

---

[5] Defendant claimed he did auto body work, a job that traditionally takes place during daytime hours.

illegal activity);

     5.  Defendant was driving on a known drug pipeline from a drug export area (California) to a drug import area (Des Moines, Iowa); and

     6.  When Trooper Bushnell mentioned drugs, Defendant avoided eye contact.  Failure to make eye contact has been found to contribute to reasonable suspicion.  *See Kopp*, 45 F.3d at 1454; *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993).

     The Tenth Circuit has found reasonable suspicion of criminal activity in similar situations.  For example, in *United States v. Turner*, 928 F.2d 956, 959 (10th Cir. 1991), the court found reasonable suspicion based on nervousness and inconsistencies between the defendant's appearance and his stated occupation.  *See also Hunnicutt*, 135 F.3d at 1349(finding reasonable suspicion existed where the defendant had no proof of ownership of vehicle, no registration, no proof of authority to operate vehicle and failed to stop promptly).

     Therefore, based on the facts in the record, the totality of the circumstances, and the established case law, Trooper Bushnell had reasonable and articulable suspicion to believe that the Defendant was engaged in illegal conduct.  As such, Bushnell could lawfully detain Defendant and request consent to search the vehicle.

     The court also finds that under the totality of the circumstances, Defendant freely and voluntarily consented to the search.   As a general rule, the Tenth Circuit has found consent to be voluntary when there is no evidence of coercion and the testimony establishes that consent was freely given, even when a defendant is in custody.

> It appears [the officer] did not unholster his weapon, did not use an insisting tone or manner, did not physically harass defendant, and no other officers were present.  Further, the incident occurred on the shoulder of an interstate highway, in public view. [The

> officer] sought permission specifically to look in the trunk, and defendant got out of the car and opened the truck himself. Defendant makes no contention that he misunderstood [the officer's] request; any such claim is precluded by defendant's act of opening the trunk. Thus, defendant's consent was unequivocal and specific.

*Soto*, 988 F.2d at 1558 (10th Cir. 1993); *see United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993). Based upon the totality of the circumstances, the court finds that the Defendant knowingly, intelligently, and voluntarily gave consent to search.[6]

Specifically, the videotape shows that, during the initial encounter, the Defendant understood Trooper Bushnell's request for a driver's license and understood Bushnell when he asked about the ownership of the car. Bushnell spoke to Defendant in English during the initial encounter and Defendant replied in English. Moreover, after Bushnell waved Defendant back to his patrol car, the tape reveals that the Defendant generally understood Trooper Bushnell, and reveals further that when he did not understand, he told Bushnell he did not understand.[7] The tape shows that the Defendant spoke in full sentences and responded immediately and appropriately to most of Bushnell's questions or statements.

Although Defendant did not take the stand on this issue, he argues that he did not understand Trooper Bushnell's use of the words "buscar" and "mirar." He put on expert testimony on this issue, clearly implying that he was confused by Bushnell's Spanish or simply

---

[6] The evidence also establishes that Trooper Bushnell reasonably believed that the Defendant consented to the search. The Fourth Amendment requires only that the police reasonably believe that the search is consensual. *Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990).

[7] The first time Defendant said he did not understand was when Trooper Bushnell was explaining the license plate cover and Defendant again says he doesn't understand during a conversation about the trunk.

did not understand the trooper.[8] The videotape reveals, however, that Defendant understood exactly what Trooper Bushnell was asking as evidenced by his response of "You want to see?" and then, "you want to see, okay." Moreover, the tape reveals that Defendant did not appear confused or express any lack of understanding about Bushnell's request. He did not ask for clarification, nor did he express or display any surprise when Bushnell approached the car and began searching. *See United States v. Robles*, 313 F. Supp. 1206, 1219 (D. Utah 2004).

Moreover, at the time Bushnell asked for consent, Defendant was aware that the trooper spoke limited Spanish and was doing his best to communicate. The totality of the evidence, therefore, indicates that the Defendant understood Trooper Bushnell's request to search his trunk.

In addition, the evidence establishes that Trooper Bushnell did not coerce the Defendant in any way. At the time Bushnell asked Defendant for consent to search, Bushnell was sitting in his patrol car with the Defendant standing outside the car, at the front passenger window. Bushnell used a normal tone of voice in speaking with Defendant, and made no threats. The trooper did not touch the Defendant or draw his weapon. In addition, the stop was on a public highway during broad daylight and Bushnell was accompanied only by Sgt. Ellis who did not threaten Defendant in any way.

In light of the facts, and in their totality, the evidence here establishes that Defendant was

---

[8] The Defendant's expert witness, Dr. Gerald Curtis, acknowledged in his testimony that Trooper Bushnell's request could have been understood if taken in context. Dr. Curtis also acknowledged on cross-examination that he had no idea what the Defendant was thinking or what he actually understood. The government's expert witness, Special Agent Aaron Raty of the DEA, testified that although he would not use the verbs "buscar" or "mirar" to request consent to search, he understood Trooper Bushnell's request. Agent Raty also testified that he understood the trooper's Spanish word for "trunk" and pointed out in the videotape where Defendant clearly understood the word as well.

not coerced into giving consent, was not under duress at the time and that he understood Trooper Bushnell's request for consent to search. Defendant's consent, therefore, was voluntary and the search of the car was lawful.

Having concluded that Defendant consented to the search of the vehicle, the government must next establish probable cause there was contraband inside the car to justify the destruction of the spare tire. *See United States v. Osage*, 235 F.3d 518, 522 (10th Cir. 2000) (holding that before officer may actually destroy or render completely useless a container which would otherwise be within scope of a permissive search, officer must obtain explicit authorization or have some other lawful basis upon which to proceed); *United States v. Alvarez*, 235 F.3d 1086, 1089 (8th Cir. 2000); *United States v. Strickland*, 902 F.2d 937, 942 (11th Cir. 1990).

It is well established that if a police officer has probable cause to believe there is contraband inside a vehicle, he may conduct a warrantless search of that vehicle. *Carroll v. United States*, 267 U.S. 132 (1925); *see Chambers v. Maroney*, 399 U.S. 42 (1970). Probable cause "requires only a probability or substantial chance of criminal activity, [and] not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243-44 n.13 (1983). A determination as to probable cause must be made from the "totality of the circumstances," *id*. at 241, and the appropriate standard must be applied in a "flexible, common-sense" manner. *Texas v. Brown*, 460 U.S. 730, 742 (1983). "In determining whether there is probable cause to believe that a vehicle contains contraband, the officers are entitled to rely on their training and experience in assessing the totality of the circumstances and the inferences which flow from those circumstances." *United States v. Ballard*, 600 F.2d 1115, 1119 (5th Cir. 1979); *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975)(noting that officers are entitled to draw reasonable

inferences in light of knowledge and experience).

In the instant case, Trooper Bushnell had been given consent to search by the Defendant for the search of the entire vehicle. Prior to obtaining consent, Bushnell had noted a number of factors which had led him to suspect the Defendant was transporting drugs.[9] After beginning the search, Sgt. Ellis provided Bushnell with a receipt from a body shop dated March 10, 2005, which added to Bushnell's suspicions. Moreover, when Bushnell looked into the trunk, he immediately noticed a donut spare tire with an oily substance on the outside and on the rim, a substance which could have been used to remove the tire in order to place drugs inside or to clean the tire afterwards.

Because of his suspicions, Trooper Bushnell then lifted the tire up and noticed that it was significantly heavier than the normal tire. He let a small amount of air out of the tire and noticed a chemical odor rather than the stale rubber smell that would be expected. When Bushnell turned the tire over, he could see fresh marks on the tire where the tire had been broken down. At that point, Bushnell decided to take the tire into an auto shop in order to break it down. When the mechanics at Gayle's Chevron in Richfield tried to take the tire off the metal rim, however, the tire would not come off. The tire was then cut off the rim and 15 packages of a substance which field tested positive for methamphetamine were located inside.

Based on the totality of the circumstances, Trooper Bushnell had probable cause to believe the tire contained contraband. Under the automobile exception to the warrant

---

[9] Those factors include the third party registration; the fact that Defendant did not know the registered owner's name; Defendant's implausible travel plans; defendant's inconsistent statements; the fact that Defendant was traveling on a known drug pipeline from an export city to an import city; and Defendant's failure to make eye contact with the trooper mentioned drugs.

requirement, therefore, Bushnell was entitled to damage the tire in order to search inside.[10]

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Suppress [Docket # 12] is DENIED.

DATED this 20th day of October, 2005.

BY THE COURT:

/s/ Dale A. Kimball
DALE A. KIMBALL
United States District Judge

---

[10] It is of no consequence that Trooper Bushnell removed the tire from the scene and took it to a repair shop. Based on the totality of the circumstances, Bushnell had probable cause to cut into the tire at the scene.